IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Harry Smith, Jr., ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | 1:09cv34 (CMH/TCB) |
| ) | |
| Director, Virginia Department of ) | |
| Corrections, ) | |
|     Respondent. ) | |

FILED OCT 16 2009 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Harry Smith, Jr., a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his conviction of first degree murder entered on a jury verdict in the Circuit Court for Henrico County, Virginia On June 22, 2009, respondent filed a Motion to Dismiss and Rule 5 Answer. Smith was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed a response. For the reasons that follow, Smith's claims must be dismissed. Also pending is a Motion for Judgment filed by petitioner, seeking a new trial on the ground that respondent allegedly was late in filing his response to the order to show cause. Such a procedural discrepancy is no basis upon which to set aside a lawfully-entered conviction, so petitioner's motion is without merit and will be denied.[1]

I.

On September 7, 2005, a jury in Henrico County convicted Smith of first degree murder in the stabbing death of Steven Clouser. The opinion issued by the Court of Appeals of Virginia

---

[1] According to court records, respondent was directed to show cause why the writ should not be granted in this case by Order dated April 21, 2009, and the Motion to Dismiss and supporting memorandum were filed on June 22, 2009.

affirming Smith's conviction on direct appeal reflects the following underlying facts:

> [O]n September 24, 2003, Tammy Henderson, head housekeeper of an Econo Lodge in Henrico County, entered the room of Steven Clouser as part of a routine inspection. She immediately noticed a strong smell and saw that the bed was unmade and door to the safe in Clouser's room was ajar. She left the room and immediately told her supervisor to call the police. The motel staff contacted the police, who quickly arrived on the scene and found Steven Clouser face down in his motel room, dead. The day before, Henderson had inspected the room and found nothing amiss. She testified that the safe was always locked and his bed was always neatly made before the cleaning person arrived.
>
> Clouser had been employed by Harold Johnson Pools for about two to three months before his death. Appellant was a co-worker of Clouser's, and Clouser would usually drive appellant to work each morning. Clouser drove a red minivan that he parked in front of the motel room. On September 24, 2003, the van was not in the Econo Lodge parking lot. Later, in another part of town, the van was found unlocked with the keys in the ignition. Ronald Britt, the man who found the van, drove it to North Carolina, where he was arrested. The Commonwealth nolle prossed the grand larceny auto charge against Britt conditioned upon his testifying against appellant.
>
> William Johnson, another Harold Johnson Pools employee, testified that appellant never seemed to have any money, and was always borrowing from Clouser 'anything as small as a soda for work for the day' as 'loans against his paycheck.' Johnson testified that Clouser carried a lot of cash. Shelly Wilson, bookkeeper for Harold Johnson Pools, testified that appellant started working for the company on August 22, 2003. The company paid employees every Friday, but appellant would often ask for an advance on his paycheck. 'It was a constant thing,' Wilson said. The company was still holding appellant's last paycheck, which he had never picked up. Appellant did not report or call in to work on the 24th or any day thereafter.
>
> \* \* \*
>
> Forensic experts testified that when they observed Clouser's body, it was lying on the floor, in a pool of blood. Blood stains were also on a nearby lamp and the wall. Two pillows, one found under the victim's head, the other resting over it, were blood-stained. His body

was found face down on the floor with his head positioned against the wall. The body itself had stab wounds on the head, neck, arms, hands and torso. Clouser suffered forty-three stab wounds in all, including lethal wounds across the carotid artery and jugular vein. All the wounds were inflicted by a 'sharp, blade-like instrument.' The wounds on the hands were consistent with self-defense. All the wounds appeared to be inflicted around the time of death.

The DNA of a blood stain on a blue shirt found in Clouser's room matched appellant's DNA. The likelihood of the DNA matching that of another person was more than one in six billion. DNA of the sweat stains on the collar of the shirt also matched appellant's DNA and was the same shirt containing blood stains matching his DNA. A blood stain on one of the pillows also matched appellant's DNA.

Edward Aragones, a prisoner in Henrico County, who had been convicted of forgery and passing bad checks, lived two cells down from appellant. Aragones testified to speaking with appellant numerous times about their crimes and the cases against them. According to Aragones, '[appellant] said that he had broken up with his girlfriend the day before the murder. He said that he suffered from depression and that he doesn't handle breakups too well and that he had gone on a binge getting high [on cocaine] and drinking.' Aragones testified that, after arguing with Clouser, '[appellant] says he blacked out and he says when he came to his senses, he was standing over Steve [Clouser]. Steve had a pillow over his head; and he had been - he stabbed him over 40 times.' Appellant told Aragones he took Clouser's money and left.

Appellant's cellmate testified that Aragones had questioned appellant a number of times about Clouser's murder. The cellmate also stated that he never heard appellant speak to Aragones about Clouser's murder. However, appellant was upset that Aragones was discussing it.

When Investigators Holsinger and McCune arrested appellant in Stafford County, and as they drove him to the Henrico County Jail, he told them that the last time he had seen Clouser was the morning of September 24, 2003, when he went to Clouser's motel room. Appellant told the investigators that they did not argue but 'just sat around and talked.'

Appellant testified in his own defense, saying that he visited Clouser

> in his motel room on the evening of September 22. He stated that he laid down on the bed at one point, putting his head on one of the pillows. Appellant's girlfriend had testified earlier that appellant's acne problems caused him to occasionally bleed on pillows on which he rested. He stated that his girlfriend had just broken up with him and he was not handling it well. He then went to visit his aunt briefly and entered himself into the hospital for five days and then went to Bowling Green where he lived with his girlfriend's family after reconciling with her.
>
> * * *
>
> Aragones' testimony and the number of stab wounds to Clouser's body, along with the fact that Clouser's safe was open and his money was gone, prove that appellant murdered Clouser for his money, stole the money and the van, and then fled. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of first-degree murder.

Smith v. Commonwealth, R. No. 2948-05-2 (Va. Ct. App. July 5, 2006); Resp. Att. 3. On November 16, 2005, Smith was sentenced to a term of life imprisonment.

Smith pursued a direct appeal to the Court of Appeals of Virginia, raising claims that: (1) the court erred when it denied a defense motion to strike the first degree murder charge; (2) the court erred in denying his motion for mistrial after verdict when it was discovered that the jury did not have a piece of evidence in the jury room; and (3) the evidence was insufficient to convict him of murder. Resp. Att. 1. A single judge of the Court of Appeals refused the petition for appeal on July 5, 2006. Smith v. Commonwealth, supra; Resp. Att. 3. A three-judge panel of the Court likewise refused th appeal on September 29, 2006. Resp. Att. 4. On March 15, 2007, the Supreme Court of Virginia refused Smith's petition for further appeal. Smith v. Commonwealth, R. No. 062067 (Va. Mar. 15, 2007); Resp. Att. 7.

Smith then pursued a habeas corpus action in the Supreme Court of Virginia, essentially

raising the same claims he makes in this petition. The court rejected Smith's claims on the merits and dismissed the petition on October 22, 2008. Smith v. Director, Dep't of Corrections, R. No. 080516 (Va. Oct. 22, 2008). On January 8, 2009, Smith filed the instant federal habeas petition,[2] raising the following claims:

> 1. He received ineffective assistance of counsel where his attorney failed to investigate or challenge the state's DNA forensic expert; failed to provide a DNA forensic expert for the defense to rebut the prosecution's 'inconclusive' DNA evidence; and failed to have untested DNA evidence tested.
>
> 2. He received ineffective assistance of counsel where his attorney failed to object to a prejudicial statement by the prosecutor during closing argument.
>
> 3. He received ineffective assistance of counsel where his attorney failed to investigate defendant's competency and allowed him to proceed to trial while mentally unfit.
>
> 4. He received ineffective assistance of counsel where his attorney failed to voir dire the jurors on whether they had requested the evidence that was missing from the jury room.

On June 22, 2009, respondent filed a Motion to Dismiss Smith's claims. (Docket # 8). Smith filed a response in opposition on July 14, 2009. (Docket # 14). Based on the pleadings and record before this Court, it is uncontested that Smith exhausted all of his claims as required under

---

[2] A pleading submitted by an unrepresented prisoner is deemed filed when the prisoner delivers the pleading to prison officials for mailing. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). Here, Smith certified that he placed his petition into the prison mailing system on January 8, 2009. (Docket # 1 at 6)

28 U.S.C. § 2254,[3] so this matter is now ripe for review on the merits.

## II.

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs a foul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410.

---

[3] Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must first have presented the same factual and legal claims raised in his § 2254 application to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

## III.

In all of his claims before this Court, petitioner argues that he received ineffective assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate

and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

A. Claim 1

In his first claim before this Court, Smith argues that he received ineffective assistance of trial counsel because his attorney failed to investigate and challenge the prosecution's forensic expert, and failed to call a forensic expert for the defense. When Smith made this same claim in his application for habeas relief to the Virginia Supreme Court, it was found to be without merit for the following reasons:

> Petitioner contends that the Commonwealth's forensic expert overstated the conclusiveness of a DNA profile complied from a bloodstain found on the victim's clothing, which demonstrated that petitioner was a contributor to the profile. Petitioner further contends that a defense expert could have 'offered perspective' on the DNA evidence and provided testimony explaining that the evidence, when properly interpreted, excluded petitioner as a contributor. Petitioner further alleges that had counsel sought and called an expert, the trial court would have suppressed the DNA evidence and excluded the Commonwealth's expert testimony as unduly prejudicial.
>
> The Court holds that claim (A) satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner fails to identify an expert or the existence of DNA testing that refutes the evidence proffered by the Commonwealth. The record, including the trial transcript and the affidavit of counsel, demonstrates that Jean Hamilton, a forensic scientist, qualified as an expert for the Commonwealth and testified that analysis of a stain found on the victim's clothing established that Smith could not be excluded as a contributor of DNA found in the stain and that the probability that anyone else contributed DNA to the stain was one in more than six billion. Furthermore, the affidavit of counsel demonstrates that

8

> counsel did not seek the appointment of a forensic expert to rebut Hamilton's testimony because counsel had no reasonable basis to doubt the veracity and reliability of Hamilton's analyses. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Smith v. Dir., slip op. at 1-2.

In an affidavit executed by Smith's counsel, Jeffrey L. Everhart, Esquire, counsel stated that he had been practicing law since 1982, with an emphasis on criminal defense representation, and that his experience in DNA cases dated back to the late 1980's. In counsel's experience, "[t]he DNA evidence introduced at trial against Mr. Smith was consistent with that which has been introduced in the courts of Virginia over the last two (2) decades." Counsel stated that Ms. Hamilton testified consistent with her test results that the Smith could not be eliminated as a contributor of the DNA found at the crime scene, and that the probability of randomly selecting an unrelated individual with a matching DNA profile would be one in greater than six billion, "the approximate population of the world." Mr. Everhart further attested that he did not ask for the appointment of a separate DNA expert as he had "no reason to doubt the veracity of the testing done by Ms. Hamilton on behalf of the Commonwealth. The Certificates of Analysis provided by the Commonwealth, including the Table of PowerPlex 16BIO Typing Results, were consistent with similar Certificates and Typing results" counsel had seen in "numerous cases." Smith v. Dir., Motion to Dismiss, Ex. 1 at ¶¶ 1 - 7.

Under these circumstances, the quoted determination by the Virginia Supreme Court was factually reasonable and was not contrary to, nor an unreasonable application of, the controlling federal law upon which it expressly relied. Strickland, 466 U.S. at 687. Therefore, the same result must pertain here, Williams, 529 U.S. at 412, and habeas corpus relief on petitioner's first claim

must be denied.

B. Claim 2

In his second claim, Smith asserts that his attorney rendered ineffective assistance by failing to object to a prejudicial statement by the prosecutor during closing argument. The Virginia Supreme Court found no merit to this argument, for the following reasons:

> In claim (B), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to object when the prosecutor stated during closing argument, 'You heard Jean Hamilton, nineteen years of experience. It was the defendant's blood.' Petitioner contends that the DNA evidence was insufficient to support his conviction and that the prosecutor's statement was intended to mislead the jury. Petitioner further contends that had counsel objected to the prosecutor's statement, the jury would have been 'reminded' that Hamilton's results failed to establish that the blood recovered from the victim's clothing belonged to petitioner.
>
> The Court holds that Claim (B) satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavit of counsel, demonstrates that counsel had no reasonable basis upon which to object to the prosecutor's statement, which reasonably reflected Hamilton's testimony. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Smith v. Dir., slip op. at 2 - 3.

For the reasons discussed in connection with Claim 1, petitioner's supposition that the DNA evidence was inadequate to sustain his conviction is mistaken, so the prosecutor's statement to the jury that "[i]t was the defendant's blood" was neither false nor misleading. Therefore, had counsel objected to it, the objection rightfully would have been overruled. Accordingly, the Virginia Supreme Court's conclusion that the result of the trial was unaffected by counsel's alleged shortcoming was

factually reasonable and was not contrary to, nor an unreasonable application of, controlling federal principles. Strickland, 466 U.S. at 687. Therefore, relief on Claim 2 must be denied. Williams, 529 U.S. at 412.

### C. Claim 3

In his third claim, Smith argues that his counsel provided ineffective assistance when he failed to investigate Smith's competency and allowed Smith to proceed to trial while mentally unfit. The Virginia Supreme Court rejected this contention on the following holding:

> In claim (C), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to investigate petitioner's competency to stand trial. Petitioner contends that, prior to trial, he informed counsel that he suffered from depression and an unidentified psychosis and that he was housed in the prison psychiatric ward while awaiting trial. Petitioner further alleges that had counsel investigated his competency, petitioner may have been able to use competency [sic] as a defense.
>
> The Court holds that Claim (C) satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. Petitioner provides no evidence to demonstrate that at the time of the offense or trial, his mental health negatively impacted his competency. In addition, the exhibits Petitioner includes in support of his petition indicate that although he has mental health issues, his judgment and insight are adequate. Furthermore, the record, including the trial transcript and the affidavit of counsel, demonstrates that Petitioner participated in his defense by testifying at trial and providing responsive and lucid answers to questions posed by counsel and the prosecutor. Counsel met with Petitioner numerous times and observed nothing that indicated Petitioner was incapable of understanding the criminal proceeding or that he was unable to assist in his defense. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Smith v. Dir., slip op. at 3 - 4.

In his affidavit submitted to the Virginia Supreme Court, counsel attested that he met with Smith on numerous occasions, and that at no time did counsel observe anything which would have led him to believe that Smith was incompetent to stand trial. Smith never told counsel that he lacked the capacity to understand the proceedings or to assist in his own defense. Instead, "on each and every occasion, [Smith] was able to intelligently discuss his case, the Commonwealth's evidence against him and trial strategies." Smith at all times was "appropriately responsive" to counsel, and was able to offer a rational explanation of how his blood came to be on a pillow at the crime scene, a complete timeline of his activities around the time of the murder, and the names of witnesses to refute the testimony of the jailhouse informant. Smith "indicat[ed] on each and every occasion that he understood what was being explained to him" by counsel. Smith v. Dir., Motion to Dismiss, Ex. 1 at ¶¶ 9 - 11. Accordingly, the foregoing holding by the Virginia Supreme Court was both factually reasonable and not contrary to, nor an unreasonable application of Strickland, 466 U.S. at 687, and Claim 3 of this petition must be denied. Williams, 529 U.S. at 412.

D. Claim 4

In his fourth claim, Smith alleges that his attorney rendered ineffective assistance because he failed to voir dire the jurors on whether they had requested to view evidence that was missing from the jury room. The Virginia Supreme Court found no merit to this argument, as follows:

> In claim (D), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to attempt to question members of the jury to ascertain if they had intended the jury's initial query as to the location of the two videotapes to be a request to view the videotapes. Following the jury verdict, counsel discovered that two videotapes had not been sent to the jury for their deliberations. Counsel moved for a mistrial, but did not seek to question any jurors after Deputy Long testified that the jury had inquired as to the location of the tapes and had been told the tapes would not be sent

> back unless the jury requested to view them. Petitioner contends that had counsel interviewed the jury, he would have learned that the jury had asked to see the tapes, and the motion for a mistrial would have been granted.
>
> The Court holds that Claim (D) satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavit of counsel, demonstrates that after Deputy Long told the jury they would receive the videotapes if they asked to view them, the jury made no additional request to view them. Petitioner fails to establish that the members of the jury wanted to view the tapes, which depicted petitioner's interview with the police, or that viewing the tapes during deliberations would have affected the verdict. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Smith v. Dir., slip op. at 4 - 5.

The record reflects that the jury reached its verdict of guilt of first-degree murder on Friday, September 9, 2005. Tr. 578-79. The jurors were polled, and each indicated that he or she agreed with the verdict. Tr. 581 - 82. When court reconvened the following Monday, defense counsel moved for mistrial based upon the fact that two videotapes which had been entered into evidence were not sent to the jury room during deliberations. Tr. 584 - 85. The bailiff, Deputy Long, was sworn, and testified that before the onset of deliberations, one of the jurors asked where the videotapes were. The deputy responded that the tapes and a television set were not going to be provided unless the jurors requested them, but no such request was forthcoming and the matter never came up again. Tr. 587. The court denied the motion for mistrial on the holding that it had been made known to the jury that the tapes and video equipment were available to them if requested, and that "of course" such a request would have been granted had it been made. Tr. 588. Defense counsel noted his objection to the ruling, Tr. 588, and the denial of the motion for mistrial subsequently was challenged on direct

13

appeal, Resp. Att. 1 at 13 - 14, but the claim was found to be without merit on the holding that "[b]ecause the jury knew the tape was available to them, the trial court did not err in denying appellant's motion for mistrial." Smith v. Commonwealth, slip. op. at 4.

Under these circumstances, the holding by the Virginia Supreme Court that counsel did not perform ineffectively by failing to voir dire the jurors on the issue of whether or not they wanted to view the videotapes was both factually reasonable and not contrary to, nor an unreasonable application of Strickland, 466 U.S. at 687. The record makes it clear, as the state courts recognized, that the jurors were aware that they could request an opportunity to review the tapes, which they previously had watched during the trial, Tr. 585, but no such request was forthcoming. When the jurors thereafter returned their verdict, the jury poll revealed no exceptions to the unanimous verdict of guilt. Since there thus is nothing in the record to suggest that a voir dire of the panel on the issue of the videotapes would have changed the outcome of the proceedings, the prejudice prong of the Strickland test is not met, which alone is fatal to a claim of ineffective assistance. Spencer, 18 F.3d at 233. Therefore, claim 4 of this petition must be dismissed.

## IV.

For the above stated reasons, petitioner's Motion for Judgment will be denied, and this petition will be dismissed. An appropriate Order shall issue.

Entered this __16th__ day of __October__ 2009.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia